JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER GARCIA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br><br>ABM GENERAL SERVICES, INC.; ABM INDUSTRIES, INC.; and DOES 1 to 100, inclusive,<br><br>　　　　　Defendants. | Case No.: 2:24-cv-08713-MEMF-AS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [ECF NO. 16]** |

　　　　Before the Court is Plaintiff's Motion to Remand. ECF No. 16. For the reasons stated herein, the Court GRANTS the Motion.

/ / /

/ / /

1

I. **Factual Background**[1]

Plaintiff Alexander Garcia was employed by Defendants ABM General Services, Inc. and ABM Industries, Inc. (collectively, "ABM") as an hourly non-exempt employee from in or around 2021 until on or about July 25, 2024. Compl. ¶ 4.

Garcia and similarly situated hourly non-exempt employees worked more minutes per shift than ABM credited them with having worked. Compl. ¶ 15. ABM failed to pay Garcia and other employees all wages for all hours worked due to certain policies, practices, or procedures, including requiring employees to clock out for their meal breaks while continuing to work throughout that time. *Id.* This caused ABM to fail to pay Garcia and other employees required overtime. *Id.* ¶¶ 21, 22. ABM also failed to provide employees with required meal periods and failed to pay them for working through the meal period. *Id.* ¶¶ 28, 30. Garcia and similarly situated employees were not given required ten-minute rest breaks and were not allowed to accrue sick days. *Id.* ¶¶ 34, 40. Due to the foregoing violations, ABM ultimately failed to provide accurate wage and hour statements to Garcia and other employees. *Id.* ¶ 44. Finally, ABM did not pay unpaid wages after an employee's employment ended. *Id.* ¶ 46.

II. **Procedural History**

Garcia filed suit in Los Angeles County Superior Court on September 5, 2024. *See* ECF No. 1 ("NOR"). Garcia brings eight causes of action based on California law: (1) failure to pay wages for all hours worked; (2) failure to pay overtime wages; (3) failure to authorize and permit meal periods; (4) failure to authorize and permit rest periods; (5) failure to pay wages for accrued pay sick days; (6) failure to provide complete and accurate wage statements; (7) failure to timely pay all earned wages and final paychecks; (8) unfair business practices. *See generally* Compl.

Defendants removed the action to this Court on October 9, 2024, under the jurisdiction of the Class Action Fairness Act ("CAFA"). *See* NOR. Garcia filed the instant motion to remand on

---

[1] The following factual allegations are derived from the allegations in Plaintiff's Complaint, ECF No. 1, Ex. A ("Compl."), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

January 27, 2025. ECF No. 16 (the "Motion"). ABM filed their opposition on February 14, 2025. ECF No. 22 ("Opposition"). Garcia filed his reply on February 21, 2025. ECF No. 23 ("Reply").

### III. Applicable Law

"Federal courts are courts of limited jurisdiction," and can only hear cases where there is a valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991). Although there are several possible bases for federal jurisdiction, only one is relevant to this Order: the diversity jurisdiction provisions of the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d)(2). Federal district courts have jurisdiction over class action lawsuits where the amount in controversy exceeds $5,000,000 and minimal diversity requirements are met.[2] *See id.*

When a plaintiff files an action in state court over which federal courts might have jurisdiction, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. When the defendant does so pursuant to CAFA, the defendant must make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff contests whether the amount of controversy is sufficient for jurisdiction, "evidence establishing the amount is required." *Id.*

The defendant who removed the case bears the burden "to show the amount in controversy by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022). There is "no antiremoval presumption" in cases invoking CAFA jurisdiction. *Dart Cherokee*, 574 U.S. at 89. In other words, while a defendant bears the burden of showing removal is proper, there is no "thumb on the scale against removal." *Jauregui*, 28 F.4th at 994.

Rather, the procedure is that "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted)). In determining the amount in controversy, the defendant may rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936

---

[2] The parties do not dispute any aspect of jurisdiction under CAFA except for the amount in controversy.

1  F.3d 920, 925 (9th Cir. 2019). "An assumption may be reasonable if it is founded on the allegations
2  of the complaint." *Id.* But "a defendant cannot establish removal jurisdiction by mere speculation
3  and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

4      It is settled law in the Ninth Circuit that CAFA's provisions should be interpreted broadly
5  with a "strong preference" for class actions to be heard in federal court *when properly removed*.
6  *Jauregui*, 28 F.4th at 993. And in the early stages of litigation, a defendant has no choice but to rely
7  on assumptions when calculating an amount in controversy using the plaintiff's complaint before
8  resolving any disputes over key facts. *Id.* As a result, it is inappropriate to demand exact certainty
9  from a defendant in their calculations of the amount in controversy. *Id.* However, "[w]here a
10 defendant's assumption is unreasonable on its face without comparison to a better alternative, a
11 district court may be justified in simply rejecting that assumption and concluding that the defendant
12 failed to meet its burden." *Id.* at 996. On the other hand, where "a defendant's assumption is rejected
13 is because a different, better assumption is identified . . . the district court should consider the claim
14 under the better assumption—not just zero-out the claim." *Id.* In those circumstances, the Court
15 should identify, applying a preponderance of the evidence standard, the best possible assumptions,
16 and use these to calculate the total amount in controversy. *See id.*

17     On the other hand, where "a defendant's assumption is rejected is because a different, better
18 assumption is identified . . . the district court should consider the claim under the better
19 assumption—not just zero-out the claim." *Id.* In those circumstances, the Court should identify,
20 applying a preponderance of the evidence standard, the best possible assumptions, and use these to
21 calculate the total amount in controversy. *See id.*

22     If the total amount is found to be greater than $5,000,000, the action will remain in federal
23 court. *See* 28 U.S.C. § 1332(d)(2). If not, it should be remanded to state court. *See id.*

27 / / /
28 / / /

4

IV. **Discussion**

In removing the case initially, ABM calculated the amount in controversy to exceed $5,000,000 through assumptions based on Garcia's Sixth and Seventh Causes of Action alone. In particular, by applying a 100% violation rate to the alleged failure to provide accurate wage statements and failure to timely pay wages upon separation, ABM calculated the amount in controversy of the two causes of action alone to be $5,025,613.60. NOR at 14. In moving for remand, Garcia contends that an assumption of the 100% violation rate is unsupported by the allegations of the Complaint. As explained next, the Court does not find a 100% violation rate supported, nor the alternative 20% violation rate suggested by ABM in opposition. Accordingly, the Court does not find that ABM has shown by a preponderance of the evidence that the amount in controversy has been met.

A. **The Court Does Not Find ABM's Assumptions Supported**

ABM contends that a violation rate of 100% for the derivative claims is reasonable based on the allegations in the Complaint, and, from that, calculates that the amount in controversy is met from the Sixth and Seventh Causes of Action alone.

For the Sixth Cause of Action (Failure to Provide Accurate Wage Statements), ABM submits evidence through affidavit that it issued at least 7,950 wage statements in the one-year prior to the filing of the Complaint. NOR at 35.[3] There were 412 people who received at least one wage statement, thus making 412 wage statements "initial" wage statements and 7,538 "subsequent" wage statements with no one person credited with more than 40 wage statements. *Id.* Thus, ABM calculates as follows: (412 "initial" statements x $50) + (7,538 "subsequent" statements x $100) = $774,400 in controversy for this claim.

For the Seventh Cause of Action (Failure to Timely Pay Wages Upon Separation), ABM submits that 887 employees separated from employment with ABM in the three-year period prior to

---

[3] The statute of limitations for this claim is one year. Cal. Civ. Proc. Code § 340(a).

the filing of the Complaint. NOR at 42.[4] ABM also submits that the average hourly rate of pay in that period of time was $19.97, with an average shift length exceeding 8 hours. *Id.* Therefore, ABM calculates the waiting time penalty as 887 employees x $19.97 x 8 hours x 30 days = $4,251,213.60.

While the Court finds these calculations technically sound, the Court finds the language pointed to by ABM insufficient to presume a 100% violation rate, even for derivative claims. ABM contends that "the only fair reading of the Complaint is that *each* wage statement issued" was defective and "that *each* former employee was owed wages." Opposition at 11. To support this, ABM hypothesizes that even a 20% meal period violation rate will result in 100% of wages being inaccurate and not paid. *Id.* However, ABM has provided no basis to support a 20% meal period violation rate, or any particular percentage at all. Even presuming that every employee with some underlying violation of one of Garcia's direct claims did not have an accurate wage statement and were not timely paid their wages, there is no evidence of how many employees have underlying violations. For example, the 20% meal period violation rate could just as likely be for 20% of all employees as it is for 20% for each employee. In the former scenario, that would translate to only 20% of violations as to the derivative claims.

ABM relies heavily on several paragraphs of the complaint that allege certain "policies, practices, and/or procedures" of ABM. However, that something is a policy, practice, or procedure does not provide any indication of *how many* employees it affects or *how often* it affects them.

ABM alternatively contends that the amount in controversy is satisfied by calculating a 20% violation rate as to the derivative claims combined with various rates of violation for the other claims. Opposition at 16. Again, the problem is that the percentage provided appears to be arbitrary and not tethered to any evidence nor the language of the Complaint. Although a defendant "must be able to rely on a chain of reasoning that includes assumptions," this is only the case "as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 994. ABM's underlying assumptions are untethered to the language of the Complaint and therefore unreasonable. Although

---

[4] The statute of limitations for this claim is three years. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

6

ABM claims they are taken from the language of the Complaint, this Court finds that in reality, they are the equivalent of the "speculation" and "assumptions . . . pulled from thin air" that the Ninth Circuit has prohibited. *See Ibarra*, 775 F.3d at 1197, 1199. As the Ninth Circuit made clear in *Jauregui*, if the removing party's assumption "is unreasonable on its face without comparison to a better alternative," then the Court may "simply reject that assumption and conclude that the defendant failed to meet its burden," without identifying specific alternative assumptions. *Id.* Here, as described above, the Court finds that ABM's assumptions were unsupported by the Complaint and facially unreasonable, and thus the Court rejects them without needing to identify alternative assumptions.

ABM also calculates attorneys' fees to be 25% of the amount established by the other claims. However, setting aside whether 25% is an appropriate percentage, as the Court finds that the underlying assumptions are unreasonable, any resulting calculation from the attorneys' fees is unsupported.

Finally, ABM asserts that because Garcia alleges "off the clock" work, there is no way for ABM to show at this stage further support for its assumptions, and to require greater support is not what CAFA requires. Be that as it may, this Court is limited by the plain language of the statute and is bound by Ninth Circuit authority. Neither the statute nor case law permit the Court to relax or modify the applicable requirements under the circumstances presented by this case.

Moreover, it does not appear that the Court's requirement is an onerous one. As other courts have found, another approach would be for Defendants to obtain the information needed to show the amount in controversy in state court and seek to remove at that time. *Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRX, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019) ("Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement. Perhaps they simply get Plaintiff to identify what the violation rates would be for *Plaintiff*, and then use that information as a sample to

extrapolate out the calculation for the entire class."). It certainly appears to the Court that should the Defendants later obtain information showing the amount in controversy, they could attempt removal at that time. *See* 28 U.S.C. § 1446; Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 2D-7 (Time for Removal), §§ 2:3230 ("Where removability is uncertain, *the 30-day period is measured from the point at which defendant had notice that the action is removable . . . .*"); 2:3247.2 ("Uncertainty as to amount in controversy under CAFA: Even where it would be a fair assumption from the named plaintiff's alleged damages to conclude that the amount in controversy is met, *defendant is not charged with notice of removability absent the receipt of a paper indicating the amount demanded by the putative class as a whole*.").

Accordingly, the Court does not find that ABM has met its burden in showing that any particular violation rate is reasonable to apply. The Court therefore rejects the assumptions and concludes that ABM has failed to meet their burden of showing by preponderance of the evidence that the amount in controversy is over $5,000,000.[5]

### B. The Court Denies Garcia's Request for Attorneys' Fees

In connection with the Motion, Garcia seeks attorneys' fees under 28 U.S.C. § 1447(c). A court may award fees and costs under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Otay Land Co. v. United Enters. Ltd.*, 672 F.3d 1152, 1156 (9th Cir. 2012). Here, although the Court disagrees with ABM that the particular percentage rates it set forward were supported, the Court does not find that ABM lacked an objectively reasonable basis for the removal—ABM provided technically sound calculations based on what they believed to be a conservative estimate of the amount in controversy.

Accordingly, the Court DENIES Garcia's request for attorneys' fees.

---

[5] The Court issued a tentative ruling in advance of the hearing proposing to the grant the Motion. At the hearing, counsel for ABM suggested—without any support in the tentative, but apparently relying on the fact that the Court has granted motions to remand in other cases—that the Court was contemplating granting the motion to remand as a case management measure in light of the "avalanche" of wage and hour claims before the federal courts. Counsel then had the temerity to suggest other, preferable ways of addressing this alleged "avalanche." As the Court advised counsel in the hearing, and as the Court reminds the parties here, this Court takes seriously its obligation to handle each motion based upon the applicable facts and law and has done so in this case. Any suggestion to the contrary is completely inappropriate. Counsel is reminded of its obligations as a member of the State Bar of California under Rule 8.2(a) of the California Rules of Professional Conduct.

### V.  Conclusion

For the foregoing reasons, the Motion to Remand is GRANTED. This matter is remanded to the Los Angeles County Superior Court forthwith.

IT IS SO ORDERED.

Dated: March 11, 2025

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge